UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANKASA LAND TRUST,<br><br>    Plaintiff,<br><br>  v.<br><br>TOTAL LENDER SOLUTIONS, INC., *et al.*,<br><br>    Defendants. | 1:26-cv-03827-KES-CDB<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. 2)<br><br>**14-DAY OBJECTION DEADLINE** |

## I.  Background

Plaintiff Bankasa Land Trust initiated this action with the filing of a complaint on May 18, 2026, asserting causes of action against Defendants Total Lender Solutions, Inc. ("TLS"), Urbane Development, LLC ("URD"), and MK Consultant, Inc. ("MKC"). (Doc. 1). That same day, Plaintiff filed an *ex parte* motion for temporary restraining order ("TRO"). (Doc. 2).

The allegations in the complaint and the motion are difficult to understand. Insofar as the Court can comprehend, in the complaint, Plaintiff alleges that it is the owner of a promissory note executed in connection with a transaction, "recorded as Instrument No. 224064745 on June 5, 2024, in the Official Records of the Recorder of Kern County, California." Plaintiff cites to the Uniform Commercial Code ("UCC") sections 3-104 and 3-302 for the proposition that the "instrument is negotiable instrument and Plaintiff's signature gave it value" and cites to IRS Publication 1212 for the proposition that the promissory note "constitutes and original issue discount ("OID") instrument – a publicly offered security that was converted by Defendants without Plaintiff's informed consent into a financial asset for Defendants' benefits." (Doc. 1 at 4). Plaintiff asserts

1

that TLS is a California corporation that is the acting trustee under a deed of trust, recorded in Kern County at instrument number 224064745; that URD is a limited liability company that "purports to have acquired rights in Plaintiff's property through an unauthorized trustee sale"; and that MKC is a corporation that "facilitated the trustee sale and maintains the sale information" at its website under file number 250627573. *Id.* at 3-4.

Plaintiff alleges that the subject property is located at 8130, 8134, and 8068-8072 California City Boulevard, California City, California. A "trustee sale was scheduled" for January 28, 2026, at 10:00 a.m. at Bakersfield City Hall, 1501 Truxtun Avenue, Bakersfield, California, under file number 250627573, with a "claimed unpaid balance" of $93,766.84. Plaintiff alleges that the "trustee sale was conducted without lawful authority, without proper standing, without proof of actual money lent, and in violation of Plaintiff's constitutional rights." *Id.* at 6. Plaintiff asserts that TLS "represented that money was 'loaned' to Plaintiff when in fact no actual money [] was lent" as the "transaction constituted a bookkeeping entry, not a transfer of lawful money" and TLS did not transfer "actual money" to Plaintiff's account; TLS did not have authority to "sell, transfer, or assign the account or property" belonging to Plaintiff and was "merely a nominee/representative who sold real property" belonging to Plaintiff "without authority" to URD, facilitated by MKC; and that TLS, "as a money transmitting business and transfer agent, was required by federal banking law … to present the security to the United States Treasury to complete the conversion and request interest payments on behalf of and for the benefit of [Plaintiff]." Plaintiff cites to 31 U.S.C. § 5311 *et seq.* and 12 U.S.C. §§ 1951-1960. *Id.* at 5-6.

Plaintiff alleges that TLS, "without disclosure, chose to convert [Plaintiff's] security into a financial asset" and was "required by federal banking law to present the security to the United States Treasury ... The lien placed against [Plaintiff's] property forces [Plaintiff] to be extorted for their own interest," constituting extortion and "racketeering with criminal intent, with the lien constituting the "enforcement of an unlawful debt and fictitious obligation." *Id.* at 6. URD, "purporting to have acquired rights through said unauthorized sale, has already begun forcibly removing [Plaintiff's] tenants from the subject property" without eviction proceedings and in "violation of the Due Processes Clauses of the Fifth and Fourteenth Amendments" to the U.S.

Constitution, as well as California Civil Code §§ 1946.2 and 1161, *et seq*. *Id.* at 6-7.

Plaintiff contends that the Court has jurisdiction under both federal question and diversity of citizenship bases. (Doc. 1-1). Plaintiff asserts numerous causes of action: (1) conversion of original security; (2) failure to provide disclosures under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635; (3) failure to return credit balances under TILA, 15 U.S.C. § 1666d; (4) violation of the Securities Act of 1933; (5) violation of the Securities Exchange Act, Rule 10b-5; (6) violation of the Securities Investor Protection Act ("SIPA"); (7) violation of the Sherman Antitrust Act; (8) violation of the Bank Secrecy Act ("BSA"); (9) violation of the federal anti-tying statute, 12 U.S.C. § 1972; (10) violation of the Right to Financial Privacy Act ("RFPA"); (11) violation of the Single Family Mortgage Foreclosure Act; (12) bank fraud under 18 U.S.C. § 1344; (13) civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (14) forfeiture under 18 U.S.C. § 981; (15) malicious mischief under 19 U.S.C. §§ 1361-1369; (16) aggravated identity theft under 18 U.S.C. § 1028A; (17) due process violations under 42 U.S.C. § 1983; (18) equal protection violations under 42 U.S.C. § 1983; and (19) ultra vires acts. *Id.* at 3-5; (Doc. 1 at 8-19). Plaintiff also cites numerous criminal provisions under Title 18 of the U.S. Code, without further elaboration. (Doc. 1 at 29-30).

Plaintiff seeks monetary sanctions, that the Court "strike all filings containing misrepresentations, and refer the matter for criminal prosecution against all persons who have submitted false statements in connection with the trustee sale and foreclosure proceedings." (Doc. 2 at 1). Plaintiffs seek a restraining order against all Defendants from attempting to convey or interfere with the subject property, from removing or harassing any tenants of the subject property, requiring restoration of any tenants forcibly removed, and requiring TLS to produce proof that money lent came directly from TLS to an account of Plaintiff's. (Doc. 2 at 3-4).

In support of its motion for emergency injunctive relief, regarding the likelihood of success on the merits, Plaintiff asserts that Defendants TLS, URD, and MKC "converted Plaintiff's Original Security without authorization or informed consent," "failed to prove that actual money was lent," and "have acted ultra vires in conducting the trustee sale." (Doc. 2 at 1-2). Plaintiff asserts that a "national bank may lend only its money and never its credit" and TLS has "failed to produce proof

3

from the United States Treasury that actual money was transferred directly from [TLS] to an account in [Plaintiff's] name." Regarding irreparable harm, Plaintiff states that URD is "already forcibly removing tenants from the subject property at 8130, 8134, and 8068-8072 California City Boulevard, California City, CA 93505, without any eviction proceedings, without any court order, and without any due process of any kind." *Id.* at 2. Regarding the balance of hardships, Plaintiff states that it "stands to lose real property, rental income, tenant relationships, and fundamental constitutional rights" without injunctive relief, whereas Defendants "face only the temporary delay of an unauthorized sale and the cessation of unlawful eviction activities." *Id.* at 2-3. Regarding the public interest, Plaintiff asserts that the public has a compelling interest in "preventing unlawful foreclosures," "protecting the due process rights of property owners and tenants," "preventing extrajudicial evictions," "enforcing compliance with federal securities, banking, and consumer protection laws," and "maintaining the integrity of property records and the judicial process." *Id.* at 3.

## II.   Governing Authority

"A preliminary injunction [or TRO] is an extraordinary remedy never awarded as of right."[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). The purpose of a TRO is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65.

A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party must appear to defend"). The court may not attempt to determine the rights of persons not before it. *See, e.g.*, *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234-35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727-28 (9th Cir. 1983). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in

---

[1] "The legal standards applicable to TROs and preliminary injunctions are substantially identical." *Babaria v. Blinken*, 87 F.4th 963, 976 (9th Cir. 2023) (quotations and citations omitted).

4

active concert or participation."    Fed. R. Civ. P. 65(d)(2)(A)-(C).    "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

"A plaintiff seeking a preliminary injunction [or TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter*, 555 U.S. at 20).    "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).    Because the first factor "is a threshold inquiry and is the most important factor," a "court need not consider the other factors" if a movant fails to show a likelihood of success on the merits. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal quotation marks and citations omitted); *see, e.g.*, *Babaria*, 87 F.4th at 980 ("We need not consider the remaining *Winter* factors because plaintiffs fail to show a likelihood of success on the merits.").

### III.    Discussion

Here, the undersigned finds Plaintiff fails to establish entitlement to the emergency injunctive relief it seeks in its application for a TRO.    Plaintiff fails to carry his burden of demonstrating that the Court has jurisdiction over the claims asserted and that Alberto S. Godoy may appear as representative on behalf of Plaintiff Bankasa Land Trust.    However, even if Plaintiff were to establish that the Court has jurisdiction and Mr. Godoy may appear as representative for Plaintiff, the motion fails to comply with the Local Rules and does not establish the *Winter* factors of irreparable harm or likelihood of success on the merits.    The undersigned will address each issue in turn.

#### A.  Jurisdiction

##### i.  Legal Standard

The Court has a duty to consider its own subject matter jurisdiction, regardless of whether the issue is raised by the parties and is required to dismiss an action over which it lacks jurisdiction.

*See Morongo Bank of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988); Fed. R. Civ. P. 12(h)(3). Federal courts have limited jurisdiction and can adjudicate only those cases which the United States Constitution and Congress authorize them to adjudicate. *Kokkonen v. Guardian Life Ins. Co.*, 551 U.S. 375 (1994). "To proceed in federal court, a plaintiff's pleading must establish the existence of subject matter jurisdiction. Generally, there are two potential bases for the federal subject matter jurisdiction: (1) federal question jurisdiction, or (2) diversity jurisdiction." *Martinez v. Hoff*, No. 1:19-cv-00923-LJO-SKO, 2019 WL 3564178, at *1 (E.D. Cal. Aug. 6, 2019). Courts "'possess only that power authorized by Constitution and statute,'" and "must presume 'that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Newtok Village v. Patrick*, 21 F.4th 608, 615 (9th Cir. 2021) (quoting *Kokkonen*, 511 U.S. at 377).

### ii. Analysis - Diversity Jurisdiction

28 U.S.C. § 1332(a) vests district courts with original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and is between citizens of different states. Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996). "Subject-matter jurisdiction can never be waived or forfeited," and "courts are obligated to consider *sua sponte*" subject matter jurisdiction even when not raised by the parties. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

Here, Plaintiff does not allege its citizenship in the complaint. *See* (Doc. 1). However, Plaintiff asserts in the civil cover sheet attached to the complaint that it is organized under the laws of the state of California. (Doc. 1-1 at 1). Plaintiff also asserts, in both the civil cover sheet and the complaint itself, that TLS is a citizen of California. *Id*; (Doc. 1 at 3). Thus, there is not complete diversity as Plaintiff and TLS are both citizens of California and, accordingly, the Court lacks jurisdiction on the basis of diversity.

### iii. Analysis – Federal Question

A case "arises" under federal law either where federal law itself creates the cause of action or where the vindication of a state law right would "necessarily [turn] on some construction of

6

federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983)). Stated otherwise, a claim arises under federal law if the complaint cognizably pleads that federal law created the claim asserted or the plaintiff's right to relief necessarily depends on resolving a substantial question of federal law. *Franchise Tax Bd*, 463 U.S. at 27-28. Courts determine whether they have federal question jurisdiction by applying the "well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id*. Federal question jurisdiction does not arise from the "mere presence of a federal issue in a state cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (holding that passing references to federal issues are not a "password opening federal courts to any state action embracing a point of federal law").

Here, Plaintiff's complaint is unclear as to the precise allegations. Plaintiff references numerous federal statutes. However, mere references to federal statutes are not enough to establish federal jurisdiction. *See Roberts v. Olson*, No. 22-cv-1373 JLS (BLM), 2023 WL 1869337, at *1 (S.D. Cal. Jan. 25, 2023) ("Mere reference to some aspect of federal law in the complaint does not automatically establish federal question jurisdiction.") (citation and quotation omitted). As discussed further *infra*, Plaintiff does not cognizably plead facts sufficient to present a federal question on the face of the complaint.

Plaintiff also cites, without elaboration, to federal criminal statutes under Title 18 of the U.S. Code (Doc. 1 at 29-30), and includes causes of action for bank fraud, forfeiture, malicious mischief, and aggravated identity theft (Doc. 1-1 at 4). References to criminal statutes do not state a claim for relief in a civil proceeding. *See Clinton v. Allison*, No. 3:23-cv-01471-CAB-SBC, 2024 WL 1859956, at *10 (S.D. Cal. Apr. 29, 2024) (discussing plaintiff's references to federal and state criminal statutes and finding "criminal statutes do not give rise to civil liability under section 1983"); *Jones v. Cnty. of Sonoma*, No. 23-cv-02730-CRB, 2024 WL 1354496, at *4 (N.D. Cal. Mar. 29, 2024) (finding plaintiff "fails to state a claim under 18 U.S.C. § 1503 because the statute

only applies to criminal cases and does not provide a civil cause of action"); *Bland v. Gross*, No. 1:20-cv-00542-DAD-BAM (PC), 2021 WL 120964, at \*1 (E.D. Cal. Jan. 13, 2021) ("'Title 18 of the United States Code is a criminal statute and does not provide individual plaintiffs with a private cause of action.'") (quoting *Kennedy v. World Sav. Bank, FSB*, No. 14-cv-05516-JSC, 2015 WL 1814634, at \*7 (N.D. Cal. Apr. 21, 2015)).  Accordingly, the criminal statutes do not themselves establish a basis for jurisdiction.

It does not appear, therefore, that this Court has jurisdiction on either a diversity or federal question basis.  Even if Plaintiff carried his burden of demonstrating that this Court may assert subject matter jurisdiction over the claims asserted (*see Newtok Village*, 21 F.4th at 615), Plaintiff has not established Mr. Godoy may proceed in this action as its representative.

### B.  Pro Se Representation

"[C]ourts have routinely adhered to the general rule prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).  A trustee "may not claim that his status as trustee includes the right to present arguments pro se in federal court." *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 698 (9th Cir. 1987).  "Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him.  He has no authority to appear as an attorney for others than himself." *Id.* at 697 (citations omitted).

The complaint sets forth that Plaintiff is a "trust organized and existing under the laws of the State of California." (Doc. 1 at 3).  Mr. Godoy states that he is the authorized representative of Plaintiff.  (Doc. 1 at 20; Doc. 2 at 5).  Mr. Godoy does not state that he is a licensed attorney.  Thus, as he does not appear to be an attorney, Mr. Godoy may not bring this action as representative on behalf of Plaintiff. *See Flores v. California Pub. Utilities Comm'n*, No. 1:26-cv-00307-KES-SKO, 2026 WL 218953, at \*2 (E.D. Cal. Jan. 28, 2026) (citing cases and finding, "based on the record before the Court, to the extent the complaint asserts claims on behalf of the 'The Cytah Flores Legacy Trust,' Plaintiff 'in her capacities as Trustee and Beneficiary' may not proceed pro se in this action"); *Ruth Hall Fam. Tr. v. Las Vegas Metro Police Dep't*, No. 2:24-cv-01045-JAD-MDC, 2024 WL 3416057, at \*2 (D. Nev. July 12, 2024) ("Representing the interests of the trust is not

equivalent to representing a trust in a legal action, which requires a licensed attorney … Mr. Corless does not appear to be an attorney, so he cannot bring this case in this Court as a representative of the Trust.").

Even if Mr. Godoy establishes that he may proceed in this action as the representative of Plaintiff, the motion fails to comport with the Local Rules regarding notice requirements.

### C.  Notice Requirements

Plaintiff has failed to satisfy the requirements of this Court's Local Rules governing applications for TROs and preliminary injunctions, particularly as to notice requirements.  Actual notice to the affected parties is required, "[e]xcept in the most extraordinary of circumstances." Local Rule 231(a), (d).  A "court may issue a temporary restraining order without written or oral notice to the adverse party" only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

Plaintiff attaches a certificate of service to its motion.  (Doc. 2 at 22-23).  The certificate includes check-boxes to indicate whether service was completed on each Defendant by certified mail, personal service, or electronic service via CM/ECF.  However, the certificate does not set forth any details regarding the methods of service on any Defendant.  Thus, Plaintiff does not set forth that Defendants received actual notice of the motion.   Nor does Plaintiff set forth "extraordinary circumstances" that would excuse notice or provide reasons for the futility of notice. *See* (Docs. 1, 2).  Thus, Plaintiffs' failure to notify Defendants is, by itself, an independent basis to decline to award the requested TRO and preliminary injunction. *See Douglas v. Ezralow Co. LLC*, No. 2:24-cv-0331-KJM-CKD (PS), 2025 WL 2078740, at *2 (E.D. Cal. July 24, 2025) ("Plaintiff's failure to comply with the requirements of Local Rule 231 is sufficient justification to deny the requested temporary restraining order."), *report and recommendation adopted*, 2025 WL 2420398 (Aug. 21, 2025); *Lotze v. Total Lender Sols., Inc.*, No. 21-cv-598 JLS (WVG), 2021 WL 1293772, at *2 (S.D. Cal. Apr. 7, 2021) (denying TRO where "neither Plaintiffs nor Plaintiffs' counsel has certified in writing any efforts to give notice to Defendants" and "have not demonstrated that notice

9

is impossible or would render further prosecution of the action fruitless, as is required for an *ex parte* TRO.") (citing *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)).

Nonetheless, the undersigned considers two of the *Winter* factors and finds they weigh in favor of denying Plaintiffs' motions.

### D. Likelihood of Success on the Merits

Plaintiff has not established it is likely to succeed on the merits of its claims. *Glossip*, 576 U.S. at 876.

#### i. Criminal Statutes

First, Plaintiff asserts four causes of action based on criminal statutes: numbers 12, 14, 15, and 16, for bank fraud, forfeiture, malicious mischief, and aggravated identity theft, respectively. Plaintiff also cites numerous criminal provisions under Title 18 of the U.S. Code, without further elaboration. (Doc. 1 at 29-30). As noted *supra* in subpart A(iii), criminal statutes do not afford a civil litigant a private right of action for relief. Thus, Plaintiff is not entitled to any relief pursuant to these criminal statutes.

As to civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), under its enforcement mechanism, "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quotations and citation omitted). To state a cognizable civil RICO claim, a plaintiff must allege facts showing: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property. *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). "Racketeering activity" or "predicate acts" encompass a variety of criminal acts enumerated at 18 U.S.C. § 1961(1). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). To satisfy the "pattern" requirement, there must be at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Under some circumstances, two acts may not be sufficient. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14

10

(1985) (noting "in common parlance two of anything do not generally form a 'pattern.'")).

Plaintiff does not establish that any Defendant, as an enterprise, conducted a pattern of racketeering activity which caused injury to Plaintiff's business or property. Plaintiff's allegations are sparse and conclusory, merely listing predicate acts with their definitions but including no facts whatsoever to plausibly establish that any Defendant is or Defendants together are an enterprise and engaged in a pattern of any such acts. *See* (Doc. 1 at 15-16). Thus, Plaintiff's 13th cause of action fails.

### ii. *Section 1983 Claims*

Second, as concerns the section 1983 causes of action (numbers 17 and 18), Plaintiff fails to name any defendants who acted under color of state law. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1144 (9th Cir. 2021) (noting that a section 1983 plaintiff must establish that the defendant acted under color of state law). All three Defendants are asserted to be private corporations (Doc. 1 at 3-4), none of whom is an appropriate defendant for a section 1983 claim and Plaintiff fails to assert any facts setting forth any private defendant's actions amounted to state action. *See id*; *see also Semerjyan v. Serv. Emps. Int'l Union Loc. 2015*, 489 F. Supp. 3d 1048, 1057 (C.D. Cal. 2020) ("The Supreme Court has identified 'four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test.'") (citing *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002)). Because Plaintiff fails to adequately plead an essential element of a section 1983 cause of action (*i.e.*, action under color of state law), the Court does not have federal question jurisdiction over the claim. *See Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) ("Section 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrong.'") (quoting *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999)).

Furthermore, in both the complaint and motion for TRO, Plaintiff makes only vague and cursory assertions relating to possible violations of constitutional rights. For example, Plaintiff asserts in its motion that Defendant URD "has already begun forcibly removing [Plaintiff's] tenants from the subject property without any eviction proceedings whatsoever, in direct and willful

11

violation of the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution." (Doc. 1 at 6-7). However, Plaintiff pleads no facts from which an inference reasonably may be drawn that any Defendant violation the U.S. Constitution. Thus, because Plaintiff fails to assert facts sufficient to bring any cognizable claims under the Fifth or Fourteenth Amendments, Plaintiff's 17th and 18th causes of action fail.

### iii. Securities Claims

#### 1. Legal Standard

Plaintiff alleges numerous claims which require the existence of a security. However, Plaintiff has not alleged or otherwise demonstrated the existence of an offer or sale of any security by Defendants. The Securities Act "defines the term 'security' to include the commonly known documents traded for speculation or investment," as well as "'securities' of a more variable character, designated by such descriptive terms as 'certificate of interest or participation in any profit-sharing agreement,' 'investment contract,'" or any instrument, in general, commonly known as a "security." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 297 (1946). "The Supreme Court has expressly stated that a 'note secured by a mortgage on a home' is 'not properly viewed as [a] security[y]' under the Securities Act of 1933." *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1111 (W.D. Wash. 2011) (alterations in original) (citing *Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990)).

"The judicially crafted list of exceptions referenced by the Supreme Court in *Reves* came from the Second Circuit's holding in *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1137 (2d Cir. 1976), where the Second Circuit held that examples of a note which are not securities include 'the note secured by a mortgage on a home' and 'the short-term note secured by a lien on a small business or some of its assets.'" *Brown v. Smead*, No. 2:23-cv-02938-MEMF-KS, 2024 WL 5466812, at *6 (C.D. Cal. Sept. 27, 2024), *reconsideration denied*, 2025 WL 774934 (C.D. Cal. Mar. 10, 2025) (citing *Exch. Nat'l Bank of Chicago*, 544 F.2d at 1138). In determining whether a note constitutes a security, a court should evaluate the following factors: First, "the motivations that would prompt a reasonable seller and buyer to enter into the note in question, including whether the buyer of the note anticipates sharing in the profit the note is expected to

generate.  Second, courts should analyze the plan of distribution and whether there is trading for speculation or investment.  Third, courts should examine the reasonable expectations of the investing public.  Finally, courts should examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Id.* (quotations omitted) (citing *Reves*, 494 U.S. at 66).

### 2.  Analysis

Insofar as the Court can comprehend, Plaintiff appears to assert that it was a borrower and executed a promissory note in connection with a transaction, at instrument number 224064745 in Kern County, on June 5, 2024.  Petitioner cites to IRS Publication 1212 for the proposition that the promissory note "constitutes and original issue discount ("OID") instrument – a publicly offered security that was converted by Defendants without Plaintiff's informed consent into a financial asset for Defendants' benefits." (Doc. 1 at 4).  Plaintiff asserts that TLS is the acting trustee under a deed of trust, recorded in Kern County at the aforementioned instrument number, and that URD "purports to have acquired rights in Plaintiff's property through an unauthorized trustee sale," and that Defendant MKC "facilitated the trustee sale and maintains the sale information" at its website under file number 250627573.  *Id.* at 3-4.

A review of Kern County Recorder database shows that document number 224064745 is a deed of trust, dated June 5, 2024, with grantor listed as Bankasa Land Trust and grantee as Mejorada Emmanuel.[2]  However, the arrangement related to the deed of trust as asserted by Plaintiff resembles a mortgage on a home is not a security.  *See Brown v. Smead*, 2024 WL 5466812, at *6 ("Brown borrowed money from Smead, secured by property, with a promise to repay the money at some predetermined time, and Smead had a right to take the property if the Brown failed to pay the

---

[2]    Document    Search,    Kern    County    Assessor-Recorder,    *available    at* https://www.kerncounty.com/government/departments/assessor-recorder/records/search-for-recorded-documents-or-maps/search-by-document-number (last accessed June 1, 2026). *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F. 3d 1119 (9th Cir. 2002).

borrowed amount at the predetermined time.  At the outset, this resembles a mortgage on a home, which is an exception where a note is not a security."); *Ramirez v. J.P. Morgan Chase Bank*, N.A., No. 1:13-cv-352 AWI GSA, 2013 WL 2474619, at *3 (E.D. Cal. June 7, 2013) (noting that "courts have found that promissory notes and deeds of trust, as well as notes and mortgages, are not subject to the Securities Act of 1933") (citing *Corales*, 822 F. Supp. 2d at 1111–12).

Plaintiff does not allege any other facts setting forth that securities were sold or offered to be sold.  Rather, it appears Plaintiff borrowed funds secured by property, with a promise to repay those funds at some predetermined time, and the lender had the authority to take the property securing the loan if Plaintiff did not pay back the borrowed funds at the time agreed upon.  Plaintiff makes no allegations regarding a plan of distribution, whether trading was for speculation or investment, or that the reasonable expectation of the investing public, or the parties to this action, was that the note would be treated as a security.  Thus, these factors weigh against finding the deed of trust to be a security.

Further, Plaintiff fails to demonstrate that the transaction involved some offer to the general public, and there is no indication that the agreements entered into were designed for public trading. The facts as pleaded in the complaint appear to relate to a private transaction between private parties.  Thus, the facts do not support any finding that the deed of trust at issue is the "sort of instrument that comes to mind when the term 'security' is used and does not fall within the 'ordinary concept of a security.'" *Brown*, 2024 WL 5466812, at *7 (quotations omitted) (citing *Marine Bank v. Weaver*, 455 U.S. 551, 559 (1982)).

Thus, Plaintiff has failed to allege the sale of a security, a necessary element for claims asserted under the Securities Act of 1933, the Securities Exchange Act (Rule 10b-5), and for any related claim of conversion of an original security.  Therefore, Plaintiff fails to plead an essential element of its first, fourth, and fifth causes of action.  *GIA-GMI, LLC v. Michener*, No. C06-7949 SBA, 2007 WL 2070280, at *5 (N.D. Cal. July 16, 2007) (noting that "the basic elements of a Rule 10b-5 claim are: (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss"); *Brown*, 2024 WL 5466812, at *5 (noting Section 5 of the Securities Act of 1933 makes it "unlawful

to offer or sell a security in interstate commerce if a registration statement has not been filed as to that security, unless the transaction qualifies for an exemption from registration," a required element of which is that "the defendant directly or indirectly sold or offered to sell securities").

Further, the Securities Investor Protection Act ("SIPA") does not provide a private right of action, nor does the section of the statute under which the rule was promulgated. *See Shipman v. Wells Fargo Advisors*, No. 4:26-cv-00159-SRC, 2026 WL 411860, at *2 (E.D. Mo. Feb. 13, 2026) ("But importantly, this statute (known as the Securities Investor Protection Act of 1970), SEC Rule 15c3-3 (17 C.F.R. § 240.15c3-3), and the section of the statute under which the SEC Rule was promulgated (15 U.S.C. § 78o) do not supply Shipman with a private right of action.") (citing, *inter alia*, *Berner v. Lazzaro*, 730 F.2d 1319, 1320 n.1 (9th Cir. 1984), *aff'd*, 472 U.S. 299 (1985) ("The district court correctly dismissed the Section 15(c) claim.  No private right of action exists under this section.")).  Thus, Plaintiff's sixth cause of action fails.

### iv.  *Remaining Claims*

#### 1.  Truth in Lending Act ("TILA")

"In the language of the statute, TILA applies to transactions in which 'the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.'" *Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1129 (C.D. Cal. 2010) (quoting 15 U.S.C. § 1602(h)).  "Loans made for primarily business or commercial purposes are exempted from the provisions of TILA []." *Herschelman v. New Century Mortg. Corp.*, No. CV 09-00461 DAE-KSC, 2010 WL 4448224, at *4 (D. Haw. Oct. 29, 2010); *see Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 630 (D. Md. 2009) ("If the credit transaction is for a business or commercial purpose, it is not subject to TILA at all.").

Plaintiff offers no assertions that the underlying financial transaction was for a personal purpose.  Rather, the properties listed by Plaintiff as securing the loan (8130, 8134, and 8068-8072 California City Boulevard, California City, CA 93505) appear to be commercial property.  Thus, as Plaintiff fails to plausibly assert that the principle purpose of the loan was consumer in nature rather than commercial, TILA is not applicable and Plaintiff's second and third causes of action

fail. *See Daniels*, 680 F. Supp. 2d at 1130 ("Thus, because Plaintiff's Second Amended Complaint fails to allege any facts regarding Plaintiff's principal purpose in obtaining the loan, Plaintiff has failed to state a claim under TILA and RESPA. Even more importantly, Plaintiff's Second Amended Complaint suffers from an even more significant deficiency … The [loan] application contains a box to select whether the loan is for 'primary residence,' 'secondary residence,' or 'investment.' Plaintiff checked 'investment.'") (citation and emphasis omitted).

2.   <u>Sherman Antitrust Act</u>

"The antitrust laws do not provide a remedy to every party injured by unlawful economic conduct. It is well established that the antitrust laws are only intended to preserve competition for the benefit of consumers … A plaintiff may only pursue an antitrust action if it can show antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999) (citations and quotations omitted). "For this reason, a plaintiff must allege injury not only to itself, but to competition within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')." *Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, No. CV 07-00043 MMM (SSx), 2007 WL 4976364, at *14 (C.D. Cal. Oct. 29, 2007), *aff'd*, 323 F. App'x 571 (9th Cir. 2009). "To allege injury to competition, a plaintiff may not merely recite the bare legal conclusion that competition has been restrained unreasonably. [A]t a minimum, it must sketch the outline of the antitrust violation with allegations of supporting factual detail." *Id.* (citations and quotations omitted; alterations in original). To assert such a claim under the Sherman Antitrust Act, a plaintiff must plead (1) a contract, combination, or conspiracy (2) by which defendants intended to harm or restrain trade or commerce and (3) which actually injures competition. *McNeil v. Home Budget Loans*, No. CV 09-7588 ODW AJWX, 2010 WL 1999580, at *3 (C.D. Cal. May 13, 2010).

Here, Plaintiff does not plead any injury to competition within a field of commerce in which it is engaged, nor does Plaintiff plead a contract or conspiracy in which Defendants intended to harm or restrain trade or commerce, and which in fact injured competition. Thus, Plaintiff's seventh cause of action fails.

16

3. Bank Secrecy Act ("BSA")

The Bank Secrecy Act "requires financial institutions and other businesses to file certain reports or records that are likely to have a 'high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.'" *Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-cv-02778-TSH, 2019 WL 3503109, at *6 (N.D. Cal. Aug. 1, 2019) (citing 31 U.S.C. § 5311). "While these statutes provide for civil and criminal penalties, a defendant's liability for failure to comply is to the United States government. For this reason, courts are unanimous in holding that there is no private right of action under the [Bank Secrecy Act]." *Id.* at *7 (citing cases); *see InjuryLoans.com, LLC v. Buenrostro*, 529 F. Supp. 3d 1178, 1186 (D. Nev. 2021) ("Courts appear to have held unanimously that there is no private right of action under the Bank Secrecy Act, Patriot Act, and associated regulations either independently or under a theory of negligence per se.").

Thus, as the Bank Secrecy Act does not permit a private right of action, Plaintiff's eighth cause of action fails. *See Venture Gen. Agency*, 2019 WL 3503109, at *7 (citing cases and noting that, "as there is no private right of action, there can be no duty of care arising out of the BSA's monitoring requirements").

4. Bank Holding Company Act (Anti-Tying Statute)

"A claim under the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972, requires a plaintiff to plead and demonstrate that: (1) the banking practice was unusual in the banking industry; (2) an anti-competitive tying arrangement existed; and (3) the practice benefits the bank." *Kerr v. Bank of Am., N.A.*, No. 3:15-cv-00306-MMD-WGC, 2016 WL 5107069, at *3 (D. Nev. Sept. 19, 2016), *aff'd*, 710 F. App'x 321 (9th Cir. 2018).

Plaintiff does not allege or demonstrate that requiring a lien to secure a promissory note and the implementation of trustee services are unusual in the banking industry, nor that an anti-competitive tying arrangement existed. Further, Plaintiff does not adequately plead that any Defendant is, in fact, a bank. *See Tate v. Indymac Bank FSB*, No. CV 09-5042 ODW (PLAx), 2009 WL 10671242, at *7 (C.D. Cal. Nov. 30, 2009) (dismissing Bank Tying Act claims where "Plaintiff has not alleged facts demonstrating that Defendant MERS or Mortgageit are banks within the meaning of the Act."). Thus, Plaintiff's ninth cause of action fails.

17

5.    Right to Financial Privacy Act ("RFPA")

The Right to Financial Privacy Act provides that "[a] financial institution shall not release the financial records of a customer until the Government authority seeking such records certifies in writing to the financial institution that it has complied with the applicable provisions of this chapter." 12 U.S.C. § 3403(b). "Under the RFPA, customers aggrieved by the improper disclosure of their records have a private right of action against the governmental authority that obtained the records and the financial institution that disclosed the records." *Lowe v. ViewPoint Bank*, 972 F. Supp. 2d 947, 956 n.6 (N.D. Tex. 2013) (quotation and citation omitted).

Plaintiff does not allege or demonstrate that any Defendant made any disclosure to a government agency. Indeed, insofar as the Court can comprehend, Plaintiff appears to assert that TLS failed to make a disclosure that was "required by federal banking law to present the security to the United States Treasury." (Doc. 2 at 5-6). Thus, Plaintiff's tenth cause of action fails.

6.    Single Family Mortgage Foreclosure Act

The Single Family Mortgage Foreclosure Act "creates uniform standards for foreclosure of mortgages held under the National Housing Act." *Saticoy Bay LLC v. SRMOF II 2012-1 Tr.*, No. 2:13-cv-1199 JCM VCF, 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015). "Under the Single Family Mortgage Insurance Program, [the United States Department of Housing and Urban Development] ["HUD"] insures mortgages issued by private lenders (commonly known as FHA insurance) on single family homes pursuant to a congressional mandate … By insuring the mortgage, HUD encourages private lenders to make loans to individuals who would not otherwise qualify for a loan." *Sec'y of Hous. & Urb. Dev. v. Sky Meadow Asso.*, 117 F. Supp. 2d 970, 973 (C.D. Cal. 2000). The Single Family Mortgage Foreclosure Act applies only to mortgages that are held by the Secretary of Housing and Urban Development or that secure loans obligated by HUD. *Torabi v. Washington Mut. Bank*, No. 12cv1299 WQH, 2013 WL 12415752, at *4 (S.D. Cal. Jan. 23, 2013) (citing *Demetriades v. Allison*, No. 7:12CV00374, 2012 WL 3562780, at *3 (W.D. Va. Aug. 17, 2012)).

Plaintiff does not allege or demonstrate that the Secretary of Housing and Urban Development holds or held any mortgage at issue or that a mortgage secures loans obligated by

18

HUD. Thus, Plaintiff's eleventh cause of action fails. *See Torabi*, 2013 WL 12415752, at *4 ("Plaintiff does not allege that HUD issued his mortgage or that HUD ever held his mortgage … Plaintiff has failed to allege any facts that are 'plausibly suggestive of a claim entitling [him] to relief' under the Single Family Mortgage Foreclosure Act."); *Gutierrez v. Wells Fargo Bank*, No. C 08-5586 SI, 2009 WL 322915, at *3 (N.D. Cal. Feb. 9, 2009) ("Plaintiff does not allege that HUD issued his mortgage or that HUD ever held his mortgage, and absent evidence that the Secretary of HUD initiated foreclosure proceedings against the plaintiff, he cannot state a claim under the SFMFA.").

### 7. Fair Debt Collection Practices Act ("FDCPA")

Though Plaintiff does not assert a standalone cause of action under FDCPA, it is mentioned by Plaintiff in the complaint. *See* (Doc. 1 at 3). "To establish a violation of the FDCPA, Plaintiff must show: (1) [it] was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a 'debt collector' as defined by the FDCPA, (4) who engaged in an act or omission prohibited by the FDCPA." *Moriarity v. Nationstar Mortg., LLC*, No. 1:13-cv-00855-AWI, 2013 WL 3354448, at *4 (E.D. Cal. July 3, 2013) (citations omitted).

A "debt collector" is defined by statute as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). This definition "excludes a creditor attempting to collect a debt [owed] to it while using its own name or 'any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person.'" *4405 Bay Valley Fam. Land Tr. v. Hughes Watters Askanase, LLP*, No. 3:13-cv-2545-N-BN, 2013 WL 12100780, at *6 (N.D. Tex. Dec. 10, 2013), *report and recommendation adopted*, 2014 WL 772953 (N.D. Tex. Feb. 27, 2014) (citing 15 U.S.C. § 1692a(6)(A), (F)(iii)).

Plaintiff does not allege or demonstrate that any Defendant is a debt collector as defined by statute for purposes of the FDCPA. Plaintiff also does not allege or demonstrate that the debt was in default when it was obtained by a Defendant. *Cf. Moriarity*, 2013 WL 3354448, at *4

19

("According to the complaint and judicially noticed documents, the debt was in default when Nationstar obtained it: Nationstar has provided a Notice of Default dated October 21, 2011, and Plaintiff alleges that Nationstar Mortgage was assigned as the new servicer of her mortgage in May 2012."); *Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1194 (E.D. Cal. 2013) ("Given the additional factual allegations regarding the incidents alleged, Plaintiff's allegation that Defendant Elsen regularly engaged in the collection of debts at Defendant Blackstone and directly and indirectly participated in the conduct alleged in the complaint are sufficient to state claim against Defendant Elsen for violation of the FDCPA and RFDCPA.").

Further, Plaintiff fails to allege facts concerning how any Defendant engaged in an act or omission that violated one of the provisions of the FDCPA.  *See Laugenour v. Northland Grp. Inc.*, No. 2:12-cv-2995 GEB DAD, 2013 WL 3745727, at *3 (E.D. Cal. July 15, 2013) ("Here, plaintiff's complaint merely alleges in a conclusory manner that the defendants used false or deceptive means to attempt to collect a debt without providing any further elaboration or specificity in the allegations of her complaint."); *cf. Moriarity*, 2013 WL 3354448, at *4 ("Specifically, Plaintiff alleges that, without her consent, Nationstar placed a call at 6:58 A.M., in violation of 15 U.S.C. § 1692c (a)(1); that it made twenty calls after receiving Plaintiff's request to stop calling her, in violation of 15 U.S.C. § 1692c(c); that it took more than five days to send her the information required in 15 U.S.C. § 1692g(a); and that it placed calls whose natural consequence is to harass …").  Thus, Plaintiff fails to assert any claims under the FDCPA.

### 8.  State Law Claims

Plaintiff mentions violations of certain state law statutes in its complaint, for example California Civil Code § 1946.2 and California Code of Civil Procedure § 1161, *et seq.*  (Doc. 1 at 7).  As Plaintiff fails to assert any viable claims under federal law, the Court will not evaluate Plaintiff's state law claims as there does not appear to be any reasonable basis to assert supplemental jurisdiction of such claims.  *See Watison v.* Carter, 668 F.3d 1108, 1117 (9th Cir. 2012) (if court declines to exercise supplemental jurisdiction over state law claims once court dismissed federal claims, then the court should dismiss the state law claims without prejudice); *see also Carnero v. Elk Grove Fin., LLC*, No. 16-cv-03606-BLF, 2016 WL 6873544, at *3 (N.D. Cal.

Nov. 22, 2016) ("Absent a viable federal claim, the Court declines to exercise supplemental jurisdiction over the Carneros' remaining state law claims.  The Court therefore does not consider the viability of the Carneros' state law claims in evaluating their TRO application.  The Court notes, however, that the state law claims suffer from the same types of defects as the TILA claim, in that they are disjointed, confusing, and lack facts adequate to make out plausible claims against the named Defendants.") (citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (noting that a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction)).

In sum, Plaintiff's allegations and factual assertions do not demonstrate any likelihood of success on the merits as to all federal claims pled in the complaint.

### v.   Irreparable Harm

Next, Plaintiff has not established it is likely to suffer irreparable harm in the absence of preliminary relief.  *Glossip*, 576 U.S. at 876.  As best the Court can determine, the harm Plaintiff asserts concerns Plaintiff's vague and conclusory allegations of removal of tenants at 8130, 8134, and 8068-8072 California City Boulevard, California City, CA 93505.  (Doc. 2 at 2).  However, Plaintiff does not set forth any assertions that Plaintiff is a tenant at said properties.  Rather, the allegations in the complaint set forth that a trustee sale occurred on January 28, 2026, regarding the properties at issue.  At the sale, Defendant URD acquired rights to the properties and "has already begun forcibly removing [Plaintiff's] tenants from the subject property."  (Doc. 1 at 7-8).

The trustee sale occurred in January 2026.  Plaintiff provides no reasons for why its motion was filed nearly four months after the trustee sale resulting in transfer of rights of said properties.  There is no indication in Plaintiff's motion as to why Plaintiff could not file a motion for TRO prior to the sale, or in close proximity to the sale, or indeed, immediately after the sale.  Thus, it appears that the harm alleged by Plaintiff is forcible removal of Plaintiff's tenants.  However, Plaintiff does not allege itself to be a tenant and, rather, the sale, which Plaintiff asserts was "conducted without lawful authority," already occurred in January 2026.  (Doc. 1 at 6).  It is also unclear as to when tenants are being removed.  Presumably, as the sale occurred in January 2026, removal of tenants may have commenced soon after the sale.  Plaintiff states only that removal of tenants "has already

begun" but provides no dates as to such removals.

Plaintiff provides no explanation for why removal of tenants at the aforementioned properties would result in irreparable harm to Plaintiff.  Additionally, the delay in filing this motion undercuts a likelihood of irreparable harm.  Thus, the Court finds Plaintiffs fail to demonstrate a risk of immediate irreparable harm.  *See In re Keating*, No. 2:16-BK-14882-WB, 2017 WL 3017089, at *9–10 (Bankr. C.D. Cal. July 14, 2017) ("Further, because U.S. ROF III has already foreclosed on the Property, the foreclosure cannot serve as a basis for the TRO, unless Debtor is able to show that there is a real and immediate threat of foreclosure occurring again … Debtor's possible eviction from the Property does not qualify as an irreparable injury … Debtor's interest in the Property has already been extinguished through foreclosure.  Thus, the TRO would not serve to prevent any loss of interest that has not already occurred."); *see also Lasko v. AMIP Mgmt.*, No. CV 23-3102-DMG (SKX), 2023 WL 3792627, at *4 (C.D. Cal. June 2, 2023) ("They waited to file this TRO until May 31, 2023, notwithstanding certain Defendants entering the Property on April 6, 2023, a May 3, 2023 notice of trustee's sale, and the May 26, 2023 notice to quit.  This delay weighs against a finding of urgency and irreparable harm.").

At most, Plaintiff has shown irreparable harm is possible, rather than likely, which is insufficient to warrant the grant of emergency relief.  *Alliance for the Wild Rockies*, 632 F.3d at 1131.

*        *        *        *        *

In sum, as Plaintiff fails to carry its burden of demonstrating that this Court may assert subject matter jurisdiction over the claims asserted, fails to establish that a pro se individual (Mr. Godoy) may bring this action on behalf of Plaintiff, fails to demonstrate either that *ex parte* relief is warranted or that proper notice of the TRO was provided to Defendants, fails to demonstrate a likelihood of success on the merits of its presently-noncognizable claims, and separately, fails to persuasively show a likelihood of irreparable harm in the absence of relief, the undersigned finds no basis to recommend issuance of the extraordinary remedy of a temporary restraining order.  *Winter*, 555 U.S. at 20, 24; *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the

22

movant, by a clear showing, carries the burden of persuasion'''); *Los Angeles Press Club v. City of Los Angeles*, 790 F. Supp. 3d 838, 845 (C.D. Cal. 2025) ("A temporary restraining order is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such emergency relief.").

**IV.    Conclusion and Recommendation**

For the foregoing reasons, the undersigned RECOMMENDS that Plaintiff's motion for temporary restraining order (Doc. 2) be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown.  The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 3, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

23